IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT McKINNEY,                         §
                                         §
        Plaintiff,                       §
                                         §
V.                                       §        CIVIL ACTION NO. H-08-1009
                                         §
MICHAEL J. ASTRUE,                       §
COMMISSIONER OF THE SOCIAL               §
SECURITY ADMINISTRATION,                 §
                                         §
        Defendant.                       §

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this social security appeal is Defendant's Motion for Summary Judgment and Brief in Support (Document No. 14), Plaintiff's Motion for Summary Judgment and Brief in Support (Document No. 15), and Defendant's Response to Plaintiff's Motion for Summary Judgment and Brief in Support (Document No. 16). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 14) be GRANTED, that Plaintiff's Motion for Summary Judgment (Document No.15) be DENIED, and that the decision of the Commissioner be AFFIRMED.

**I. Introduction**

Plaintiff Robert McKinney ("McKinney") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and for supplemental security income ("SSI"). McKinney argues that substantial evidence does not support the decision of the Administrative Law Judge ("ALJ"), and that the ALJ, Richard L. Abrams, committed errors of law by not fully and fairly developing the record and that his actions did not rise to the "special duty" placed on an ALJ to assist the claimant in exploring the relevant facts when a claimant is unrepresented by counsel. Because of this, McKinney argues that the ALJ's findings that he retains a residual functional capacity of medium work with some restrictions and that there are other jobs in the area that McKinney could perform are invalid (Tr. 13-4) and should be overturned. The ALJ relied on the testimony of vocational expert ("VE") Hermann Litt, who testified that McKinney could work as a laundry worker, a hand packager, or a hospital cleaner. (Tr. 15). Combining this with his determination that McKinney's ailments did not meet or equal in severity the requirements of the medical listings of 20 C.F.R. Part 404, Subpart P, Appendix 1, and with the determination that McKinney's vocational profile under the general guidelines of Rule 203.19 approximates a finding of "not disabled," the ALJ concluded that McKinney was not and had not been disabled any time through the date of decision, October 28, 2005. (Tr. 16-7).

According to McKinney, the ALJ erred by (1) not fully and fairly developing the record during the administrative proceedings, specifically in regard to the claim of back problems, and (2) because the ALJ's actions during the proceedings did not rise to the level of the "special duty" an ALJ has to

an unrepresented claimant, specifically to develop the record and explore the issues as  counsel for claimant would do. *See Reefer v. Barnhart*, 326 F.3d 376 (3rd Cir. 2003); *Heckler v. Campbell*, 461 U.S. 458, 470-1 (1983) (quoting *Broz v. Schweiker*, 677 F.3d 1351, 1364 (11th Cir.  1982)). McKinney moves the Court for an order reversing the Commissioner's decision and awarding benefits, along with attorney's fees.  The Commissioner argues in response that there is substantial evidence to support the ALJ's decision that McKinney was not disabled as a result of his impairments, the decision comports with applicable law, and therefore it should be affirmed.

## II. Administrative Proceedings

McKinney applied for disability insurance benefits and supplemental security income benefits on the protective filing date of October 10, 2003, claiming he had been unable to work since August 17, 2003, due to a roll-over car accident where he sustained injuries to his face and neck, and which also caused problems with his vision.  (Tr. 64-8).  The Social Security Administration denied both his initial claim and his reconsideration claim on January 27, 2004, and June 18, 2004, respectively. (Tr. 20, 29).  McKinney then requested a hearing before an ALJ, which was filed on July 20, 2004, and granted by the Social Security Administration on September 4, 2004.  (Tr. 34-6).  At that time, McKinney was represented by counsel, Sandra Morales, but it is unclear why she did not represent him at the hearing itself**,** as the record is silent on this issue.  (Tr. 36).[1]  The hearing before the ALJ was conducted on March 31, 2005, and his claims were heard *de novo*.  (Tr. 216).  The ALJ issued his decision on October 28, 2005, which found that McKinney was not disabled.

---

[1]Although it is unclear from the record what Ms. Morales did for McKinney, the Social Security Administration sent a letter to her acknowledging her client's request for a hearing before the ALJ. However, McKinney was unrepresented by counsel during the hearing itself.

The ALJ found, at step one, that McKinney had not engaged in substantial gainful work since the alleged onset date of disability.  At steps two and three, he found that McKinney had severe impairments of facial paralysis and a history of multiple facial fractures.  Furthermore, the ALJ found that McKinney's impairments do not meet or equal in severity the requirements of any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At step four, the ALJ found the claimant's testimony regarding his subjective pain "was only partially credible and not fully consistent with the record considered as a whole." (Tr. 16).  He further determined that McKinney retained the residual functional capacity ("RFC") to perform medium work, "compromised by avoidance of hazards such as heights, vibrations, and dangerous machinery" and also not be any fine visual acuity necessary, along with no crawling or balancing.  (Tr. 16).  The ALJ also decided that McKinney could not perform any of his past relevant work, relying on the testimony of the VE, Hermann Litt.  Further relying on his testimony and McKinney's RFC, the ALJ found, by using as a framework the Medical-Vocational Guidelines, *see* Appendix 2, Subpart P, Social Security Regulations No. 4, Rule 202.13, that McKinney was not disabled because he could perform other medium work jobs, including hospital cleaner, hand packager, and laundry worker, all of which existed in significant numbers in the regional and national economy.  Due to this, the ALJ found that McKinney was not disabled within the meaning of the Act.

McKinney then filed for review by the Appeals Council of the ALJ's adverse decision.  (Tr. 5).  The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R.§§

404.970, 416.1470.  After considering McKinney's arguments, the Appeals Council concluded, on March 3, 2006, that there was no basis under their rules to review the ALJ's decision, which then became the final decision of the Commissioner.  (Tr. 5).  McKinney timely filed his appeal of the ALJ's decision.  42 U.S.C. § 405(g).  Both McKinney and the Commissioner filed Motions for Summary Judgment (Document Nos. 14 & 15).  This appeal is now ripe for ruling.

The evidence is set forth in the administrative transcript, pages 1 through 246.  There is no dispute between the parties regarding the facts therein.

**III. Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.  42 U.S.C. § 405(g).   While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues *de novo*, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparro v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see*

5

*also Jones v. Apfel*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.  Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

[he] is not only unable to do [his] previous work but cannot, considering [his] age,

6

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."  *Anthony,* 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999).  Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v.*

*Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner determines the claimant is or is not disabled, the evaluation ends.  *Leggett*, 67 F.3d at 563.

Here, the ALJ found that McKinney, despite his impairments, had the RFC to engage in medium work, with restrictions: he would have to avoid heights, vibrations, and dangerous machinery, as well as crawling and balancing, and any tasks requiring fine visual acuity.  (Tr. 16). The ALJ further found that even though McKinney could not perform his past relevant work, he could, given his approaching advanced age, his level of education, and his past work as a laborer, and relying on the Medical-Vocational Guidelines and the testimony of the VE, perform other kinds of jobs and was therefore not disabled under the Act.  As a result, the Court must determine whether substantial evidence existed to support the ALJ's finding at step five.  The Court must also determine whether the ALJ, given that McKinney was unrepresented by counsel during the hearing, fulfilled his duty to develop the record.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age.  *Wren*, 925 F.2d at 126.

## V. Discussion

### A. Objective Medical Evidence

The objective medical records from the administrative proceedings show that McKinney complained of and was treated for facial paralysis and multiple facial fractures.

The records state that McKinney was involved in a roll-over car accident in the early morning of August 17, 2003, where he suffered various facial fractures resulting in some facial paralysis. (Tr. 127). He was treated by Alberto A. Maillard, M.D., at Memorial Hermann, who performed various surgeries to repair the damage to McKinney's face, using a variety of bars and plates. (Tr. 126-132). The hardware was removed by Dr. Maillard between October 13 and 14, 2003, with no complications. (Tr. 177). Further, Dr. Maillard reported that McKinney was responding well to treatment and the prognosis was good. (Tr. 103). McKinney also had a lateral tarsorrhaphy[2] on his eyes as a result of the accident. (Tr. 197). He continued to receive treatment for the facial paralysis until March 2004 (Tr. 189-196); after this, the medical record trails off, as McKinney stated that he could not afford to see a doctor, did not have insurance, and therefore did not see one. (Tr. 234-5).

There are no objective medical records in the administrative record which would help lend credibility to McKinney's claims of other impairments, including neck pain, back pain, hearing problems, and seizures. (Tr. 14). McKinney also complained of double vision, which Vern Laing, M.D., the medical expert who testified during the hearing, stated could easily be fixed with the use of an eyepatch on the affected eye. (Tr. 231-3).

Substantial evidence, then, supports the ALJ's findings that, while McKinney's impairments would be considered severe at step two of the analysis, the impairments do not meet or equal in severity any of those listed. Additionally, the medical evidence substantially supports the ALJ's finding that McKinney had the RFC to perform medium work, based upon the totality of the evidence. The ALJ specifically set out his reasons of the decision in support of this determination.

---

[2] "The surgical suturing of a tarsal plate." Matthew Bender & Co., Inc., Attorneys' Dictionary of Medicine 492 (39th ed. 2005).

The objective medical evidence weighs in favor of the ALJ's decision.

### B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995)). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.* "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez,* 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

The Social Security Regulations provide a framework for the consideration of medical opinions. Under 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6), consideration of a physician's opinion must be based on:

(1)     the physician's length of treatment of the claimant,

(2)     the physician's frequency of examination,

(3)     the nature and extent of the treatment relationship,

(4)     the support of the physician's opinion afforded by the medical evidence of record,

(5)     the consistency of the opinion with the record as a whole, and

(6)     the specialization of the treating physician.

*Newton,* 209 F.3d at 456.  While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference.   *Id.*   Again, the Social Security Regulations provide guidance on this point.   Social Security Ruling 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg.34490 (July 2, 1996).  With regard to the weight to be given  "Residual Functional Capacity Assessments and Medical Source Statements," the Rule provides that "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 ... providing appropriate explanations for accepting or rejecting such opinion."  *Id.*  The Fifth Circuit adheres to the view that before a medical opinion of a treating physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R.§ 404.1527(d).  *Newton,* 209

F.2d at 456.  "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Id.* at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.").  However, perfection in administrative proceedings is not required.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Here, the ALJ carefully considered the medical records and the opinions of the treating physician, along with two state agency physicians and the testimony of Dr. Laing, the medical expert. Dr. Laing was called by the ALJ as a witness in order to assist the fact finder.  (Tr. 231).  He reviewed all medical records, thoroughly and adequately summarized the evidence, and set forth the specific reasons regarding the weight given to the medical evidence.

There are medical records from Dr. Alberto Maillard, the physician who treated McKinney for the facial impairments.  Progress notes from Dr. Maillard indicate that McKinney was recovering well from the operations, and the last treatment record noted that the facial palsy was improving.  (Tr. 191).  McKinney did not seek treatment after March of 2004, as he could not afford insurance; thus, the only medical records in the administrative record are the ones from the original accident and the follow-up visits with Dr. Maillard.  (Tr. 235).

Dr. Vern Laing's testimony was also relied upon by the ALJ.  Dr. Laing testified that McKinney's impairments "were treated in an appropriate manner and healed properly," and that any other additional allegations of light seizures and other pain were not reflected in any of the medical records available.  (Tr. 233-4).  Further, Dr. Laing testified that the double vision could be fixed with the use of an eyepatch, which would free up McKinney's hand as he was using it to cover his affected eye.  (Tr. 233-4).  Due to the improvements noted in the medical records and the simplicity of the

12

solution to the double vision, Dr. Laing concluded that none of the impairments would meet or equal a listing.  The ALJ properly relied upon this expert testimony in his decision.

From these few medical records, the ALJ properly concluded that McKinney still had the RFC to perform medium work.  The fact that Dr. Maillard indicated that McKinney was responding well to treatment and would recover weighs in favor of the ALJ's decision, as does Dr. Laing's similar expert testimony based upon the medical records.  The ALJ's decision was consistent with the few medical records, which did not mention any other complaints of pain from McKinney.  Thus, the Court concludes that the diagnosis and expert opinion factor supports the ALJ's decision.

### C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact a claimant cannot work without some pain or discomfort will not render him disabled.  *Cook,* 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record.  42 U.S.C. § 423.  "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform.  *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).

The Act requires this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant.  *Hames,* 707 F.2d at 166.

McKinney testified during the administrative proceedings about his condition.  According to him, his double vision, facial paralysis, and allegations of back pain, neck pain, and light seizures prevent him from working, along with problems with dentition:

> A. For one thing, I got double vision and I start having light seizures...
>
> Q. Mostly the double vision?
>
> A. I got double vision.  And half of my teeth is out.  It's like they wouldn't tighten up.  And the doctor told me, you probably going to have to get them all pulled and get a plate...

(Tr. 230-31).  He further testified that he could prepare meals for himself, as well as helping his mother clean up the house.  (Tr. 223).  When asked if he went anywhere outside his mother's home, McKinney answered that he goes to the grocery store and visits family and friends in the area, within walking distance, as well as taking walks for exercise.  (Tr. 224-25).  He also testified that he had no trouble bending over to pick up objects, that he could lift around 10-12 pounds, and that he could sit and stand for a couple of hours, but that if he stood or sat too long, pain would build up.  (Tr. 225-26).  McKinney takes over-the-counter medication, which he says relieves the back pain, specifically in his lower back.  (Tr. 227).  McKinney also testified that he drinks some alcoholic beverages on the weekends and smokes a pack of cigarettes every two to three days.  (Tr. 236-37).

Based on the following reasons, the ALJ did not find McKinney's testimony to be credible regarding his pain:

> The claimant also alleged that he had seizures, hearing problems, and neck and back

problems. A medically determinable physical or mental impairment is one that could reasonably be expected to produce the symptom alleged. SSR 96-4p. Further, the "Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. An 'impairment' must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-4p; 20 C.F.R. § 404.1508. Here, the claimant did not meet his burden by showing that he had any of the conditions he alleges. He has never received medical treatment for them, nor is there evidence that he ever reported seizures, hearing problems, or neck and back problems to any treating or examining source. Consequently, it is found that the claimant's allegation of scoliosis is not a medically determinable impairment.

After giving careful consideration to all the record evidence, including the testimony of medical expert Dr. Laing, it is concluded that the claimant does not have any impairment, either singly or in combination, which meets or equals the criteria of any Listing of 20 C.F.R. Part 404, Subpt. P, App. 1.

(Tr. 13). The ALJ further elaborated on McKinney's subjective medical evidence in a later part of

the decision:

In forms he completed for the Agency, the claimant reported a neck injury, back problems, hearing problems, and seizures. He also testified that he could not work due to experiencing facial paralysis and having poor dentation. However, as noted above, there is no evidence supporting some of these allegations. The claimant has also failed to show how having residual facial palsy and poor dentation affect his ability to perform work or work-like activities. Unfortunately, a claimant's statements alone may not be the sole basis for conclusions regarding disability; objective medical evidence must support a claim. *See* 20 C.F.R. §§ 404.1512, 416.912; *Cf.* 20 C.F.R. § 404.1508; *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989); *See also Falco v. Shalala*, F.3d 106, 164 (5th Cir. 1994). The courts have long established that the burden of proof to established medical evidence showing disability rests with the claimant. *Rodriguez v. Bowen*, 857 F.2d 275 (5th Cir. 1988).

(Tr. 14). He continued:

The evidence in aggregate must be complete and detailed enough to allow a determination about whether an individual is disabled, including determination of the residual functional capacity to do work related activities. 20 C.F.R. §§ 40.1513(d), 416.913(d). Clearly, the claimant is responsible for providing evidence that he is disabled. If the claimant fails to give the medical and other evidence that is needed, a decision will be made based on the information available in the record. 20 C.F.R. §§ 404.1516, 416.916. Here, the claimant has failed to point to objective clinical evidence that supported his alleged complaints.

15

(Tr. 14).  In McKinney's case, he was unable to see a doctor because of a lack of insurance due to financial reasons, therefore no current medical records were available at the hearing for the ALJ to rely upon.  (Tr. 234-35).  However, McKinney argues that, because he was unrepresented by counsel, the ALJ owed a "special duty" to him to more fully develop the record by asking probing questions regarding McKinney's subjective pain.  (Plaintiff's Brief 7).  He further argues that he did not completely waive his right to counsel and that the exchange regarding the waiver between the ALJ and McKinney was ambiguous and did not unequivocally waive his right to counsel.  (Plaintiff's Brief 5).  McKinney additionally argues that a failure by the ALJ to get any current medical records constitutes error (Plaintiff's Brief 6).

This Court disagrees.  McKinney cites *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981) and *Reefer v. Barnhart*, 326 F.3d 376, 380 (3rd Cir. 2003) as the main basis for his argument.  *Clark*, however, is distinguishable from the instant case: In that case, the claimant was illiterate, unrepresented, and could not afford glasses in order to see properly, and the Court there found that the notice of right to counsel in the Social Security Administration documents was inadequate and vague.  *Clark . Schweiker*, 652 F.2d 399 (5th Cir. 1981).  Here, however, the claimant appeared literate and was fully informed by the ALJ of his right to counsel.  (Tr. 217).  Neither McKinney nor his mother mentioned his previous attorney at the hearing.  Additionally, the right to counsel was mentioned clearly on many of the Social Security Administration documents.  In fact, McKinney signed the waiver form twice, and his mother explained that they both knew what the form was and what it meant.  (Tr. 51, 217).[3]  The instant circumstances are more similar to *Castillo v. Barnhart*,

---

[3]McKinney did have counsel prior to the hearing but was unrepresented during the proceedings with the ALJ.  (Tr. 36).

325 F.3d 550 (5th Cir. 2003), where the claimant effectively waived her right to counsel after four notices and an extensive dialogue with the judge about being unrepresented.

In *Reefer v. Barnhart*, 326 F.3d 376, 380 (3rd Cir. 2003), the claimant had two strokes after the ALJ held the initial administrative hearing, yet the ALJ did not hold a second hearing to examine the new medical evidence he received, nor did he require testimony from the two physicians who treated the claimant.  The Third Circuit Court deemed this an error.  *Id*.  In the instant case, McKinney simply has no further medical records on which the ALJ can rely.  In *Reefer*, the Court further faulted the ALJ for not asking the claimant enough questions to more fully develop the record, including having her describe her pain; daily activities and limitations; how much she could lift; how far she could walk; and how long she could sit and stand without discomfort.  *Id*.  The ALJ in the instant case asked McKinney all of these questions, in an attempt to solicit as much detail as possible from him.  (Tr. 223-31).  While it is true that an ALJ owes a "special duty" to an unrepresented claimant to make sure the proceedings are fair and that the record is fully developed, the ALJ is not an advocate for the claimant.  Thus, the actions of the ALJ were adequate to satisfy the "special duty" owed to an unrepresented claimant.

McKinney also cites *Hakchareum v. Barnhart*, 2003 U.S. Dist. Lexis 16012 (ND CA 2003), where the ALJ in that case had clear evidence that the claimant was still on medication and seeing a doctor regularly, yet did not attempt to acquire current and up-to-date medical records.  The ALJ in the case before this Court had no indication that McKinney was seeing a physician.  Indeed, McKinney himself stated he could not afford to see one.  (Tr. 234-35).  This is not a case of the ALJ failing to obtain the medical records.  McKinney had no additional medical records and Dr. Laing's expert testimony also corroborates this fact.  (Tr. 233).  Thus, *Hakchareum* is distinguishable on the

facts.

In May of 2006, McKinney filed a second application for benefits and was deemed disabled by an ALJ in a decision dated April 24, 2008. (Plaintiff's Brief 3). McKinney argues that because another ALJ has ruled on a second benefits application that he is, in fact, disabled, then this Court should do so as well. However, in that new application, McKinney has amended the onset date of his disability to May 3, 2006. (Plaintiff's Brief 10). In the original application, McKinney stated his onset date to be August 17, 2003. (Tr. 64-68). Therefore, this appeal is limited to the time between those dates. It is McKinney's burden to establish disability between those dates. Additionally, this Court may not consider any evidence not part of the record before the first ALJ, nor may it re-weigh any evidence or try the issues de novo. *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). The second ALJ, Helen Francine Strong, was able to consider new and current medical records provided by McKinney to prove disability. (Plaintiff's Brief 13). This new evidence, in a separate benefits application, may not be considered by this Court in this appeal. *See Pierre v. Sullivan*, 884 F.2d 799 (5th Cir. 1989) (Court may not re-weigh evidence and cannot consider evidence not a part of administrative record).

The undersigned finds there is nothing in the record to suggest the ALJ made improper credibility findings, or that he weighed the testimony improperly. There are significant inconsistencies between McKinney's subjective complaints and the objective medical evidence. The ALJ identified the inconsistencies and gave specific reasons for rejecting McKinney's subjective complaints, such as  the lack of medical evidence to support his subjective symptoms. Accordingly, this factor also supports the ALJ's decision. Furthermore, the fact that the ALJ called Dr. Vern Laing as an expert witness to review McKinney's medical records and offer an opinion is substantial evidence that the

ALJ did, in fact, fully develop the record, as required by *Reefer v. Barnhart*, 326 F.3d 376 (3rd Cir.

2003) and *Heckler v. Campbell*, 461 U.S. 458, 470-1 (1983) for an unrepresented claimant.  In

addition, the record shows that McKinney knowingly and voluntarily waived assistance of counsel.

### D. Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history and

present age.  A claimant will be determined to be under disability only if the claimant's physical or

mental impairments are of such severity that he is not only unable to do his previous work, but

cannot, considering his age, education and work experience, engage in any other kind of substantial

gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

The record shows that, at the time of the hearing, McKinney was 51 years old and had

completed the 11th grade.  (Tr. 219).  The ALJ questioned Herman Litt, a VE, at the hearing about

McKinney's ability to engage in gainful work activities.  "A vocational expert is called to testify

because of his familiarity with job requirements and working conditions.  'The value of a vocational

expert is that he is familiar with the specific requirements of a particular occupation, including

working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th

Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)).  It is well settled a

vocational expert's testimony, based on a properly phrased hypothetical question, constitutes

substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  A hypothetical question

is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by

the whole record.  Beyond the hypothetical question posed by the ALJ, the ALJ must give the

claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including

additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted

from the question)." *Bowling,* 36 F.3d at 436.

The ALJ posed the following hypothetical to Mr. Litt, the VE, during the hearing:

Q. Let me give you a hypothetical example. Take a hypothetical claimant such as our claimant here today, same educational level, job experience, and at the medium restriction...[with the] avoidance of hazards such as heights, vibrations and dangerous machinery operation, and let's put–even though it's not necessary [sp] clear from the record, let's put no work requiring fine visual acuity or binocular vision. And on top of that–I think that's it actually. Let's put no crawling, balancing, or climbing of ladders or scaffolds. With those three restrictions to the medium level, are there any jobs that could be performed?

A. Yes, sir.

Q. Okay.

A. He would be able to do jobs such as laundry worker. And in the region, we have approximately 1200 of those jobs.

Q. Okay.

A. Nationally, 240,000. Hand packager; in the region, we have approximately 1,000; the nation, 190,000. And hospital cleaner; in the region, we have approximately 900; national 195,000. These are all medium, unskilled jobs, Your Honor.

Q. And your testimony is not in conflict with the Dictionary of Occupational Titles?

A. No, sir.

Q. Or the Selected Characteristics of Occupations?

A. No, sir.

Q. Okay. All right. Let me give you one additional restriction. Let me put this at the light exertional level, same restrictions as the previous example. What do you have, if any?

A. We have jobs such as office cleaner.

Q. Okay.

A. We have in the regional approximately 1300; in the nation, 250,000. Fast food worker...We have approximately 2100 in the region and 360,000 nationally.

Q. Okay.

A. And dietary aide; we have approximately 1100 in the region and 205,000 nationally.

Q. And let me ask you the same question.  Your testimony is not in conflict with the Dictionary of Occupational Titles or the Selected Characteristics of Occupations?

Q. No, sir.

A. Okay.  Okay.

(Tr. 239-44).  McKinney was also allowed to ask questions of the VE.  (Tr. 244).

Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert.  A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record.  Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion McKinney was not disabled.  Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that McKinney could perform medium work.  All of the jobs identified by the VE were consistent with McKinney's RFC and are types of jobs that could be performed based on medium work, given McKinney's age and level of education.  Because the hypothetical questions contained all the functional limitations recognized by the ALJ, the Court concludes the ALJ's reliance on the vocational testimony was proper, and the VE's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that McKinney was not disabled within the meaning of the Act and therefore was not entitled to benefits.  Further, it is clear from the record proper legal standards were used to evaluate the evidence presented.  Accordingly, this factor also weighs in favor of the ALJ's decision.

**VI. Conclusion**

Considering the record as a whole, the Court is of the opinion that the ALJ fulfilled his "special duty" to an unrepresented claimant to fully develop the record pursuant to *Reefer v. Barnhart*, 326 F.3d 376 (3rd Cir. 2003) and *Heckler v. Campbell*, 461 U.S. 458, 470-1 (1983) and that he and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that McKinney was not disabled within the meaning of the Act; that substantial evidence supports the ALJ's decision; and the Commissioner's decision should be affirmed.  As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No. 15) is DENIED, Defendant's Motion for Summary Judgment (Document No.14) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this 2nd  day of July, 2009

Frances H. Stacy
United States Magistrate Judge

22